**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 5, 2019

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

  Re: *United States v. Jackie Cooper*, 18 Cr. 454 (KPF)

Dear Judge Failla:

  The Government submits this letter in advance of the sentencing of Jackie Cooper (the "defendant"). As explained below, the Government respectfully submits that a sentence within the range of 46 to 57 months' imprisonment, as called for by the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), should be imposed in this case.

  **I.** **Offense Conduct**

  In 2017 and 2018, the defendant worked with others—including his girlfriend, Sharon Hatcher, and his drug supplier, Anthony Corley—to distribute crack cocaine in the West Farms section of the Bronx and in particular the Lambert Houses. *See generally* United States Probation Office's Presentence Investigation Report ("PSR") ¶ 18. During the course of the conspiracy, the defendant received product from Corley, stored and packaged it in his residence, transacted with customers on a daily basis, and gave proceeds back to Corley. The defendant spoke with Corley and otherwise helped facilitate Hatcher's drug dealing, which was closely intertwined with the defendant's. *Id.* ¶ 19.

  **II.** **The Defendant's Plea and Applicable Guidelines Range**

  Pursuant to an agreement with the Government, the defendant pled guilty on April 5, 2019, to one count of conspiring to distribute crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). PSR ¶ 4. In the plea agreement, the parties stipulated that the advisory Guidelines range is 46 to 57 months' imprisonment, based on an offense level of 21 and a Criminal History Category of III. *Id.* ¶ 5. The Probation Office agrees with this calculation. *Id.* ¶¶ 32-56, 96-99.

September 5, 2019
Page 2

### III. Discussion

#### A. Applicable Law

Although *United States v. Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B. Analysis

The Government respectfully submits that a sentence within the Guidelines range of 46 to 57 months' imprisonment is appropriate in light of all of the sentencing factors set forth above, and would be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the nature and circumstances of the offense weigh in favor of such a sentence. Although crack dealing is a simple and tragically common crime, the harm that it causes throughout communities in the Bronx is profound. Every day, people in this District—as well as their friends, families, and neighbors—are torn apart by drug dealing, use, and addiction. In the defendant's building (and others impacted by the charged conspiracy), a child stepping out of her

apartment to walk to school would be met by the overpowering smell of crack cocaine cooking on the stove.  Drug suppliers (like Anthony Corley), drug dealers (like the defendant), and all types of drug addicts would be wandering in and out of the building, filling the hallways, and yelling to one another at all hours of the day and night.  While participating in this conspiracy, the defendant was *not* homeless.  His apartment building was *not* a hollow crack den condemned by the city or rotting in disrepair.  His neighbors—countless law-abiding people trying to work and go to school every day—should *not* have been forced to live their lives next to a base of drug operations.  It was the defendant, his co-conspirators, and others like them who, day-in and day-out, engaged in conduct that disturbed the peace of that community.

In recent years, the Lambert Houses and West Farms area were also home to significant violence between and among warring drug dealers and factions.  Although younger, more gang-involved dealers were typically responsible for the violent acts themselves, the defendant bears his share of responsibility for participating in the drug market that has given rise to countless robberies, assaults, slashings, stabbings, shootings, and murders.  Of course, even people not directly impacted by drug-related violence in the area also suffered serious harm from the defendant's and his co-conspirators' drug business, and indeed, the defendant himself recognizes the devastation that drugs can cause.  He represents that many of his own problems flowed from his use of crack cocaine because it caused him financial strain and affected his decision-making ability.  PSR ¶ 84.  The defendant perpetuated those same harms by selling the same poison to other people, without regard for the ramifications it would have on their lives.

*Second*, the defendant's history and characteristics weigh in favor of such a sentence.  Since 1984, the defendant has had near-constant contacts with the criminal justice sentence, sustaining *nine* convictions and multiple additional arrests.  *See generally id.* ¶¶ 45-53, 59-66.  After incurrent theft and fraud convictions in the mid-1980s and 1990s, the defendant pled guilty to selling a controlled substance, possessing a controlled substance (twice), then selling a controlled substance again (this time in a school zone), and possessing a controlled substance again.  *Id.* ¶¶ 45-46, 49-53.  Despite these convictions—and after having been sentenced to 9 to 60 months' imprisonment, one year's imprisonment (two cases), and two years' imprisonment, in addition to serving time for several parole revocations, *see id.*—the defendant has continued to engage in criminal conduct.  His history thus counsels in favor of the meaningful sentence called for by the Guidelines.

*Finally*, a sentence within the Guidelines range is needed to punish the defendant and demonstrate the seriousness of his conduct.  Such a sentence would also promote respect for the law and serve to deter the defendant from future crimes—goals that obviously were not accomplished with any of the defendant's prior convictions or sentences.  Looking beyond the defendant himself, in a case like this, where the defendant was known to be a member of a large conspiracy that was charged federally, there is a significant need for general deterrence—*i.e.*, for others who might participate in the drug trade to see that such activity will result in a significant sentence if prosecuted in federal court.  In addition, a Guidelines sentence in this case will help protect the public from the defendant, his co-conspirators, and anyone else deterred by the incarceration of defendants in this case.

September 5, 2019
Page 4

### IV.     Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 46 to 57 months' imprisonment.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Frank J. Balsamello / Sarah Krissoff
Assistant United States Attorneys
(212) 637-2325 / -2232

cc:     Michael Sporn, Esq., *counsel for defendant Jackie Cooper* (by ECF)